# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KENJI DUVILLE HAYNES,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV 15-374-RAW-KEW |
| | ) |
| **JOE M. ALLBAUGH, DOC Director,** | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is a pro se state prisoner in the custody of the Oklahoma Department of Corrections who is attacking his conviction and sentence in Wagoner County District Court Case No. CF-2012-418 for Endeavoring to Manufacture a Controlled Substance, After Conviction of Drug-Related Felonies (Count 1); Obstructing an Officer (Count 4); and Possession of Drug Paraphernalia (Count 5). He received a 40-year sentence for Endeavoring to Manufacture a Controlled Substance and one-year sentences on the two misdemeanors, which the trial court ordered to run concurrently. He sets forth the following grounds for relief:

    I.    Because Officer Webster's stop of Petitioner was improper, the trial court erred in denying the motion to suppress evidence.

    II.    The trial court erred when it deprived Petitioner of his statutory right to have court assess punishment.

    III.    The trial court improperly bifurcated proceedings by submitting the

misdemeanor offenses to the jury as part of the second stage of trial.

IV. Under the facts and circumstances of the case, a 40-year sentence for endeavoring and one-year sentences for misdemeanors is shockingly excessive punishment.

V. Appellate counsel was ineffective in failing to raise a claim that trial counsel failed to file a motion to dismiss based on the arresting officer's lack of reasonable suspicion to stop and detain.

VI. Appellate counsel was ineffective in failing to raise a claim that trial counsel failed to call Megan Ballas as a defense witness.

VII. Appellate counsel was ineffective in failing to raise a claim that only 11 jurors sat on Petitioner's jury.

Respondent concedes that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the court for consideration in this matter:

A. Petitioner's direct appeal brief.

B. The State's brief in Petitioner's direct appeal.

C. Summary Opinion affirming Petitioner's judgment and sentence. *Haynes v. State*, No. F-2013-737 (Okla. Crim. App. July 14, 2014).

D. Petitioner's application for post-conviction relief.

E. State's response to Petitioner's post-conviction application.

F. Petitioner's post-conviction appeal to the Oklahoma Court of Criminal Appeals with district court's Order Denying Post-Conviction Relief.

G. Order Remanding for Entry of Proper Order. *Haynes v. State*, No. PC-2015-295 (Okla. Crim. App. June 17, 2015).

H. Order denying application for post-conviction relief.

    I.       Petitioner's reply to State's response.

    J.      Order affirming denial of application for post-conviction relief. *Haynes v. State*, No. PC-2015-295 (Okla. Crim. App. Aug. 5, 2015).

    K.     Transcripts

    L.     Original Record

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Ground I: Motion to Suppress**

Petitioner alleges in Ground I that Officer Webster's stop of Petitioner was improper. He, therefore, asserts the trial court erred in denying his motion to quash/suppress which relied heavily on the OCCA's unpublished decision in *Gille v. State*, No. M-2004-802 (Okla. Crim. App. Oct. 21, 2015) (O.R. 75-85). The record shows the State filed a response to Petitioner's motion (Dkt. 8-12 at 12-20; O.R. 89-97), and on June 7, 2013, the trial court held a hearing and issued this decision from the bench:

> [I]n this case, giving consideration to all the evidence that was

> presented at the Preliminary Hearing, I believe that the police officer had reasonable suspicion to stop the vehicle, and then it follows that everything after that was a valid stop. I think once he stopped it and observed what he observed and smelled what he smelled, then he had probable cause to continue the detention. The Defendant's Motion to Quash and Suppress is overruled.

(Mot. Tr. 12; Dkt. 9-3 at 14).

On direct appeal, the Oklahoma Court of Criminal Appeals (OCCA) rejected this claim, holding that under the facts of the case, Petitioner's motion to suppress was properly overruled:

> The undisputed testimony showed that Appellant's vehicle was parked behind a vacant retail building that had recently been the site of a variety of crimes. The vehicle was parked very close to the rear of the building, in an alcove by the loading dock, as if to avoid detection. The vehicle's lights were off, but as soon as the officer's vehicle approached, Appellant turned his lights on and left at a high rate of speed.

*Haynes v. State*, No. F-2013-737, slip op. at 2 n.1 (Okla. Crim. App. July 14, 2014) (Dkt. 8-3). The OCCA's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

> [T]he totality of facts known and observed by the arresting officer support a conclusion that Appellant's conduct, preceding the traffic stop, was not equally consistent with innocent activity as with criminal activity. The trial court did not err in finding the investigative detention was reasonable under the circumstances. *Terry v. Ohio*, 392 U.S. 1 (1968); *Sibron v. New York*, 392 U.S. 40, 73 (1968); *Knighton v. State*, 912 P.2d 878, 887 (Okla. Crim. App. 1996).

*Haynes*, No. F-2013-737, slip op. at 2.

Fourth Amendment exclusionary rule claims are not cognizable in federal habeas

corpus proceedings if the petitioner had an opportunity for full and fair litigation of the claim in state court. *Stone v. Powell*, 418 U.S. 465, 494 (1976). Here, petitioner had the opportunity and exercised it fully. The issue was initially raised in the trial court through a motion to suppress. After hearing testimony about the search in the motion hearing, the trial court overruled the motion. Petitioner then raised the claim on direct appeal to the Court of Criminal Appeals, but the argument also was rejected by that court. Because Petitioner's Fourth Amendment was fully and fairly litigated in state court, this Court finds Ground I of the petition is meritless.

**Grounds II, III, and IV: Sentencing**

Petitioner received three concurrent sentences, with the two misdemeanor counts to run concurrently, for a total of 40 years. He alleges in Ground II of the petition that the trial court erroneously deprived him of his statutory right to have the court assess punishment. He claims in Ground III that the trial court improperly bifurcated the proceedings when it submitted the misdemeanor offenses to the jury in the second stage of trial. In Ground IV, Petitioner complains his 40-year sentence for Endeavoring to Manufacture a Controlled Substance and his one-year sentences for the misdemeanors are "shockingly" excessive. Respondent alleges these claims concerning the sentencing procedures used at Petitioner's trial raise issues of state law which are not cognizable on federal habeas review.

On direct appeal, Petitioner raised the claim in Ground II as a question of state-law statutory interpretation, although he also included a due process claim, citing *Hicks v.*

*Oklahoma*, 447 U.S. 343, 346 (1980), and *Chapman v. California*, 386 U.S. 18, 24 (1967).[1]

He, however, conceded in his direct appeal brief that this claim raised an issue regarding sentencing only (Dkt. 8-1 at 16). In essence, this claim on direct appeal alleged that it was error for the trial court to deny his request to waive the jury's assessment of sentencing, after the jury found him guilty in the first-stage proceedings. The OCCA rejected Petitioner's statutory interpretation:

> [A] defendant has no "right" to have a jury decide his guilt and then have a judge decide his sentence. *Rendell v. State*, 543 P.2d 574, 581-82 (Okla. Crim. App. 1975); *Love v. State*, 217 P.3d 116, 117 (Okla. Crim. App. 2009). The trial court did not err in denying Appellant's unilateral request for same. [This proposition] is denied.

*Haynes*, No. F-2013-737, slip op. at 2.

The OCCA also denied relief on the claim in Petitioner's Ground III of this petition:

> [T]he State concedes, and we agree, that the trial court erred in the way it bifurcated the trial, so that the jury did not recommend sentences on the misdemeanor counts until after it had received evidence of Appellant's felony criminal history, which was not relevant to the misdemeanor sentences. However, because the trial court ordered the misdemeanor terms to be served concurrently with the felony term, Appellant suffered no prejudice from the error. *Carter v. State*, 147 P.3d 243, 244 (Okla. Crim. App. 2006). [This proposition] is denied.

*Haynes*, No. F-2013-737, slip op. at 2-3.

---

[1] *Hicks* concerned a defendant who was deprived of his statutory right to have a *jury* determine punishment. *Id.*, 447 U.S. at 346. Petitioner, however, raised his Ground II claim as an issue of state-law statutory interpretation, challenging the denial of his right to have a *judge* determine punishment after the jury had determined guilt in the first stage of trial (Dkt. 8-1 at 15). *Chapman* held that before a constitutional error can be held harmless, the reviewing court must find it was harmless beyond a reasonable doubt. *Id.*, 386 U.S. at 24.

6

Regarding Petitioner's claim in Ground IV of the petition, the OCCA reasoned:

[C]onsidering Appellant's history of drug crimes, the circumstances of this particular case, and the trial court's decision to run all terms concurrently, we cannot say the sentences imposed are shocking to the conscience. *Rea v. State*, 34 P.3d 148, 149 (Okla. Crim. App. 2001). [This proposition] is denied.

*Haynes*, No. F-2013-737, slip op. at 3.

Issues concerning sentencing are matters of state law. *See Shafer v. Stratton*, 906 F.2d 506, 510 (10th Cir.), *cert. denied*, 498 U.S. 961 (1990). Challenges to state sentencing decisions "are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law."[2] *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000), *cert. denied*, 534 U.S. 887 (2001).

The Court finds that to the extent Petitioner attempted to raise a due process claim through his citations to *Hicks* and *Chapman*, he has failed to show that the OCCA's decision on these sentencing claims was contrary to, or an unreasonable application of Supreme Court law. *See* 28 U.S.C. § 2254(d). *See also Eizember v. Trammell*, 803 F.3d 1129, 1144 (10th Cir. 2015) ("[U]nder AEDPA, this court is authorized to intervene only when state courts fail to apply the Supreme Court's existing and clearly established teachings reasonably . . . .) (citation omitted). *See also Case v. State*, 555 P.2d 619, 625 (Okla. Crim. App. 1976) (holding that a defendant may not unilaterally waive the right to have the jury assess punishment under Oklahoma law).

---

[2] Petitioner's jury was instructed that "[t]he punishment for Endeavoring to Manufacture the Controlled Dangerous Substance of Methamphetamines [sic] after 2 or more conviction is imprisonment in the State penitentiary of not less than 21 years and not more than life." (O.R. 138).

7

For the reasons set forth above, the Court finds Grounds II, III, and IV of the petition concern issues of state law, and Petitioner is not entitled to habeas relief on these claims.

**Grounds V, VI, and VII: Ineffective Assistance of Appellate Counsel**

Petitioner raises three grounds for habeas relief concerning alleged instances of ineffective assistance of appellate counsel, which first were raised in his post-conviction proceedings. In Ground V, he alleges appellate counsel failed to adequate challenge the stop of his vehicle. He claims in Ground VI that appellate counsel failed to raise trial counsel's error in not calling a critical witness to testify. Finally, he alleges in Ground VII alleges appellate counsel failed to raise a claim that only 11 jurors heard his case and convicted him.

"There is a strong presumption that counsel provided effective assistance of counsel, and petitioner has the burden of proof to overcome that presumption." *United States v. Rantz*, 862 F.2d 808, 810 (10th Cir. 1988) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)), *cert. denied*, 489 U.S. 1089 (1989). To prevail on a claim of ineffective assistance of counsel, the petitioner must prove deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the petitioner must overcome the strong presumption that counsel's conduct fell outside of the wide range of professional conduct, including trial strategy. *Id*. at 689. To prove prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court

set forth the two-part test for determining the validity of a habeas petitioner's claim of ineffective assistance of counsel. The test requires a showing that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id*. at 687.

> The *Strickland* test also applies to assessing the effectiveness of appellate counsel. *See United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, we first examine the merits of the omitted issue. If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. *See Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing *Cook*, 45 F.3d at 392-93), *cert. denied*, 525 U.S. 1151 (1999)). If the issue has merit, we then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial. *See Cook*, 45 F.3d at 394.

*Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).

> Under AEDPA "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). When evaluating the state court's resolution of *Strickland's* performance requirement, federal courts must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189-90 (2011)).

*Parker v. Evans*, 569 F. App'x 611, 616 (10th Cir. 2014).

In affirming the denial of Petitioner's application for post-conviction relief, the OCCA agreed with and adopted the findings of the district court:

> In an order entered and filed June 29, 2015, the District Court of Wagoner County, the Honorable Darrell G. Shepherd, District Judge, denied Haynes' request for post-conviction relief. Judge Shepherd found that Haynes' conviction was affirmed by this Court on direct appeal, and that his claims of

9

ineffective assistance of appellate counsel were all without merit. Judge Shepherd found that the alleged illegality of the stop in Haynes' case had been challenged and rejected on direct appeal, and the claim was therefore meritless. As for the second claim, failure to call a "critical witness," the district court noted that the witness in question was a passenger in Haynes' car at the time he was stopped. Haynes failed to present evidence to the district court sufficient to show that had the passenger been called she would have testified that the drugs and lab equipment found in Haynes' car were hers. Furthermore, the court found that testimony from the passenger as to ownership of the drugs and lab equipment would not have negated Haynes' dominion, control, and joint custody over the drugs and lab paraphernalia. The court found this argument to be without merit. Finally, Judge Shepherd found that the jury verdict was the finding of 12 jurors, not eleven as claimed by Haynes, and all 12 were polled after delivering the verdict. The court found this claim unsupported by the record. The court found no merit in any of the arguments presented in the application for post-conviction relief and found there was no ineffective assistance of appellate counsel based on these claims. Finding Haynes was not entitled to relief, Judge Shepherd denied his request for relief.

*Haynes v. State*, No. PC-2015-295, slip op. at 2-3 (Okla. Crim. App. Aug. 5, 2005) (Dkt. 8-10). The OCCA further reasoned:

We find no merit in Haynes' claim as alleged in his post-conviction application. Haynes sub-divided his ineffective assistance of appellate counsel claim, citing to what he alleges were multiple trial counsel errors, and claiming appellate counsel erred for failing to raise the errors on direct appeal. Judge Shepherd, addressing the claims individually, noted that Haynes was not entitled to relief either because the record showed that the alleged error was raised and rejected on direct appeal; that the alleged error did not occur; or that Haynes failed to provide sufficient factual basis to support the alleged error.

As set forth in *Logan v. State*, 293 P.3d 969 (Okla. Crim. App. 2013), post-conviction claims of ineffective assistance of appellate counsel are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 289 (2000) ("[Petitioner] must satisfy both prongs of the *Strickland* test in order to prevail on her claim of ineffective assistance of appellate counsel."). Under *Strickland*, a petitioner must show both (1) deficient performance, by demonstrating that counsel's conduct was objectively

unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-89. And we recognize that "[a] court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).

After examining Haynes' claims of ineffective assistance of counsel, based on appellate counsel's failure to raise these claims, and pursuant to this Court's decision in the *Logan* and *Strickland* standards stated above, we find Haynes has failed to establish that appellate counsel's performance was deficient or objectively unreasonable and has failed to establish any resulting prejudice. Haynes must show a reasonable probability that appellate counsel would have prevailed on direct appeal had he argued trial counsel was deficient and that these enumerated errors resulted in prejudice. *Strickland*, 466 U.S. at 687. His claims as presented in this application for post-conviction relief are not supported by the appeal record filed in this matter. This Court has held that "merely conclusory, unprovable, or unspecific claims of ineffective assistance of appellate counsel do not raise an issue of material fact." *Logan*, 293 P.3d at 978-979. Haynes' ineffective assistance of appellate counsel claim is without merit.

*Haynes*, No. PC-2015-295, slip op. at 3-5.

*Vehicle Stop*

On direct appeal, counsel alleged the officer did not have reasonable suspicion to initiate the traffic stop, despite the fact that it was located in a high crime area, the grocery store was closed, the business had been burgled before, it was at night, and Petitioner had no apparent reason to be in the vicinity of the closed business. Appellate counsel cited two unpublished opinions in support of his claim, *Gille v. State*, No. M-2004-802 (Okla. Crim. App. Oct. 21, 2015) (O.R. 75-85), and *State v. Cavner*, No. S-2010-540 (Okla. Crim. App. Jan. 20, 2011) (Dkt. 8-1 at 34-40). Both cases concerned stops at night where the OCCA

11

found that evidence should be suppressed as having been obtained in violation of the Fourth Amendment.

Petitioner claimed in his post-conviction application that "[t]he arresting officer lacked reasonable suspicion to stop and detain. Never attributed any violation of Oklahoma law 'prior' to the dog sniff and placing Petitioner inside his police cruiser" (Dkt. 8-4 at 3). He alleged that prior to the dog sniff, he was not charged with any violation of Oklahoma law, and he never was cited for any violation of a traffic law. Petitioner referenced Officer Webster's "initial statement," which actually the Catoosa Police Department incident report (Dkt. 8-4 at 19-21).

Petitioner also cited federal cases from his direct appeal brief and additional federal cases, including *Reid v. Georgia*, 448 U.S. 438, 441 (1980) and *Brown v. Texas*, 443 U.S. 47, 52 (1979). Relying on *Brown*, the *Reid* decision stands for the proposition that "any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *Reid*, 448 U.S. at 440. This Court finds the OCCA's opinion on direct appeal was in accordance with these cases, even if it did not cite them directly.

Petitioner conceded that his co-defendant Megan Ball admitted to having marijuana in the console before the canine was deployed. He argued that during Officer Webster's questioning of Ms. Ball, she "advised him that she had marijuana and drug paraphernalia in her belongings in the console area. At this point . . . Officer Webster asked Sgt. Spencer to

watch the occupants of the vehicle while he deployed the canine around the car." (Dkt. 8-4 at 8). Petitioner concluded this post-conviction proposition by alleging there was a "legal question" concerning the canine search, because the OSBI chemist had to "scrap [sic] around the smoking device(s)" to find the drugs. (Dkt. 8-4 at 9).

This Court finds Petitioner has failed to show a reasonable probability of a different outcome of his appeal had trial counsel pursued these additional arguments regarding the Fourth Amendment claim. The OCCA was correct in upholding the trial court's post-conviction finding that the alleged illegality of the stop had been challenged and rejected on direct appeal, and that the claim was therefore meritless.

The Court further finds the search and seizure issue was thoroughly litigated, and Petitioner has not shown that additional arguments on appeal would have resulted in a different outcome. The Court notes that Petitioner's additional arguments mainly concern events which occurred after the stop, rather than the events leading to the stop, which are the more relevant facts. The officer was faced with an individual who rolled his eyes, was argumentative, gave a false name, and refused to make eye contact (Tr. 194-98). In addition, Petitioner's claims about what happened after the stop are contradicted by the trial record, which shows that before the drug-sniffing dog was deployed, the officer himself smelled the odor of marijuana, as well as the smell of a methamphetamine lab (Tr. 199). Before the dog was deployed, Petitioner's passenger, Ms. Ball, was questioned about the smells, and based on his conversation with her, the car was searched (Tr. 199-200).

The Court, therefore, finds Petitioner has failed to show that any of these collateral issues about what transpired after the stop, including the testing of evidence after it was seized, would have led to a reasonable probability of a different outcome. *Strickland*, 466 U.S. at 687-89). This habeas claim fails.

*Witness*

Petitioner next alleges appellate counsel was ineffective in failing to call Ms. Ball, the passenger, to testify. He contends "[h]er testimony would have revealed that she admitted that the items found in the console area inside the vehicle belonged to her. She recieved [sic] probation as part of plea agreement" (Dkt. 1 at 17-18). He further claims, "[t]here was also no expert testimony admitted into evidence that established that items found in trunk of car could be or were used to produce illegal drugs" (Dkt. 1 at 17-18).

In it order affirming the denial of Petitioner's post-conviction application, the OCCA affirmed the district court's denial of this claim. *Haynes*, No. PC-2015-295, slip op. at 2-3. The OCCA found Petitioner had offered nothing to the district court to show Ms. Ball, an alleged "exculpatory witness," was willing to testify that all the drugs and lab equipment belonged to her, not to Petitioner. *Id.*, slip op. 3. Moreover, the Court found Petitioner's claim regarding Ms. Ball failed to recognize that under Oklahoma law, possession can be joint, and it can be constructive. "Constructive possession can be established through circumstantial evidence proving a defendant knows of the presence of drugs or weapons and has the power and intent to control their disposition or use. A defendant's knowledge and

intent can be proved by circumstantial evidence." *Hill v. State*, 898 P.2d 155, 166 (Okla. Crim. App. 1995) (citations omitted). *See also Pebworth v. State*, 855 P.2d 605, 607 (Okla. Crim. App. 1993) ("We continue to recognize that possession may be constructive as well as actual); *Carolina v. State*, 839 P.2d 663, 665 (Okla. Crim. App. 1992) ("Where an accused did not have exclusive access, use or possession of the premises upon which drugs are found, constructive possession may be proven if there are additional independent factors which show his knowledge and control of the drugs. Such independent factors . . . include incriminating conduct by the accused . . . ." (internal citation omitted)); *Howard v. State*, 815 P.2d 679, 683 (Okla. Crim. App. 1991) ("Possession of an illegal drug may be either actual or constructive. It need not be exclusive possession, as long as there is proof that the defendant knowingly and willfully shared the right to control the dangerous substances.").

The Court, therefore, find that even if the defense had called Ms. Ball, and even if she had claimed ownership of the drugs, including the methamphetamine lab in the trunk of the car, Petitioner's own conduct would have provided the independent factors necessary to show he shared possession of the narcotics and the lab. Petitioner has failed to demonstrate a substantial likelihood of a different outcome if appellate counsel had raised a claim of ineffective trial counsel, based on the failure to call Ms. Ball as a witness. *See Richter*, 562 U.S. at 111-112.

Petitioner also alleges that counsel should have challenged the lack of "expert testimony admitted into evidence that established that items found in trunk of car could be

15

or were used to produce illegal drugs." Dkt. 1 at 18). He, however, again ignores the trial record, in particular Officer Webster's testimony. Any suggestion that the items found in the trunk of the car did not constitute a meth lab is belied by the record:

> Officer Webster also searched the trunk of the car (Tr. 216). When he opened the trunk, he "could definitely determine that's where the odor of the methamphetamine lab was coming from[.]" (Tr. 217). The odor was very potent. He found a black duffel bag, and inside the duffel bag, there was a blue lunch box. Opening the lunch box, he found the methamphetamine reaction vessel, along with many items necessary to manufacture meth (Tr. 217). Those other items included the lid of a pill crusher and an open container of a Cold Pack (Tr. 220; S.E. 15), a funnel (Tr. 221; S.E. 16), a reaction vessel with the top cut off (Tr. 221; S.E. 16), Drano, solvents, a cap with a drill hole in the middle of it containing a rubber tube, more coffee filters, and dye (Tr. 222).
>
> The reaction vessel (pop bottle) was used to house the cooking methamphetamine. All of the substances went together into that vessel (Tr. 222-223). The vessel was used, and all that was left was the trash of the meth lab (Tr. 223). The purpose of the funnel was to get all of the ingredients into the pop bottle, along with the lithium strips, the Cold Pack, and the ammonium nitrate (Tr. 223). The Drano could be mixed with muriatic acid to create Hydrochloric gas, which could be inserted into the methamphetamine liquid after the cook finished, in order to convert the liquid into a solid form (Tr. 224).
>
> After locating all these items, Officer Webster separated them from the car and from anybody in the immediate area. He blocked off the parking lots to prevent anyone from getting contaminated (Tr. 226). Then, he put on his gloves and began to neutralize the lab, so it could be transported away (Tr. 226-227). The other items were gathered up and secured in the patrol car and later transported to the police department for processing (Tr. 228). The suspected controlled dangerous substances field tested positive for methamphetamine and marijuana (Tr. 230). The methamphetamine recovered was found in the pill bottle without defendant' name (Tr. 231).

(Dkt. 8-2 at 11-12).

Officer Webster's testimony indicated he was thoroughly trained in the recognition of a methamphetamine lab, to the degree that he was able to begin the process of neutralizing the lab himself (Tr. 226-27). The positive field test for methamphetamine was confirmed by the OSBI chemist (Tr. 393-99). This directly contradicts Petitioner's claim of no expert testimony to prove the items constituted an illegal drug lab. As in the claims examined above, Petitioner has failed to show a substantial likelihood of a different outcome of his appeal, had appellate counsel chosen to raise ineffective assistance of trial counsel based on counsel's failure to challenge the conclusion that a meth lab was present in Petitioner's trunk. *See Richter*, 562 U.S. at 111-112. This claim also is meritless.

### *Jury Composition*

In his last ground for habeas relief, Petitioner alleges ineffective assistance of appellate counsel for failing to raise a claim concerning the number of jurors who decided his case. The OCCA affirmed the district court's determination that the claim was unsupported by the record. *Haynes*, No. PC-2015-295, slip op. at 3. The district court found as follows:

> [Petitioner] alleges ineffective assistance of appellate counsel in that counsel "should have recognized that only eleven (11) jurors sit (sic) in judgment." After reviewing the trial transcript, the undersigned can find no basis for Petitioner's assertion that only eleven jurors rendered a verdict. One juror was excused and replaced by an alternate. Trial Tr. Vol. 3, 554. The jury was polled after rendering its verdict. Each juror was asked if he or she was in agreement with the verdict. Twelve jurors responded affirmatively. Trial Tr. Vol. 3, 661, 662. This proposition is without merit.

*Haynes*, No. CF-2012-418, slip op. at 2 (July 1, 2015) (Dkt. 8-8).

As set forth by the trial court, the substitution of one juror did not result in a verdict by fewer than twelve jurors. *Cf.*, *Moore v. Patton*, No. 12-CV-173-CVE-FHM, 2015 WL 1246053 (N.D. Okla. Mar. 18, 2015) (unpublished) (finding the trial judge's substitution of alternate juror did not result in a violation of petitioner's constitutional right to an impartial jury as required by the Sixteenth and Fourteenth Amendments where "[t]he alternate juror was subject to the same selection procedures as the regular jurors, and the alternate juror heard all of the evidence and was instructed on the law along with the regular jurors" (internal citation omitted)). In Petitioner's case, the jury was polled, and all twelve jurors agreed that the verdict was unanimous (Tr. 660-62).

This Court finds that under these facts and circumstances, Petitioner has failed to show a substantial likelihood of a different outcome of his appeal, had appellate counsel chosen to raise an issue which clearly was contravened by the trial record. Petitioner is not entitled to habeas corpus relief on this claim.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 1) is DENIED, and Petitioner is denied a certificate of appealability.

**IT IS SO ORDERED** this 27th day of September 2018.

**Dated this 27th day of September, 2018.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma